## IN THE UNITED STATES DISTRICT COURT
### FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | | |
|---|---|---|
| FRUIT OF THE LOOM, INC., a Delaware corporation, and UNION UNDERWEAR COMPANY, INC., d/b/a FRUIT OF THE LOOM, a New York corporation, | ) ) ) ) | **JUDGE GOTTSCHALL** MAGISTRATE JUDGE DENLOW |
| Plaintiffs, | ) ) ) | **01C 2315** |
| v. | ) ) | No. |
| GILDAN ACTIVEWEAR INC., a Canadian corporation and DAVID G. CHERRY, a Canadian resident, | ) ) ) ) ) | |
| Defendants. | ) ) | DOCKETED APR 0 5 2001 |

### COMPLAINT FOR INJUNCTIVE
### RELIEF, DAMAGES AND OTHER RELIEF

Plaintiffs Fruit of the Loom, Inc. and Union Underwear Company, Inc., d/b/a Fruit of the Loom ("Fruit of the Loom"), bring this complaint against defendants Gildan Activewear Inc. ("Gildan") and David G. Cherry to enjoin the misappropriation of Fruit of the Loom's trade secrets and for other relief.

This case is about industrial espionage at the highest corporate level and the lengths to which predatory competitors will go to obtain commercial advantage. On November 27, 2000, David Cherry, Gildan's Executive Vice President of Planning and Logistics and a member of its Executive Management Committee, arranged to have Elizabeth Walton, then Fruit of the Loom's Director of Customer Service, send him copies of Fruit of the Loom's worldwide production and sales plans. Cherry called the next day and thanked Walton for sending the plans. Gildan then began to analyze these documents. In "late 2000," a member of Gildan's management asked

356582/C/2  WS7602_

/ — /

Harold Moore, then a Gildan plant manager, "to review a document that had been obtained from Fruit of the Loom." As his Statement demonstrates, Moore recognized this as a "current Fruit of the Loom Sew Plan, which outlines Fruit of the Loom's production plans." According to Moore, Cherry had "obtained the document from Liz Walton, a Fruit of the Loom employee."

The stolen operating plans provide Gildan with a road map to Fruit of the Loom's production and sales strategies worldwide. Gildan's conduct has irreparably harmed Fruit of the Loom and mocks any notion of "fair" competition. Fruit of the Loom completed its initial investigation of this recently discovered scheme on April 2, 2001. Accordingly, it now seeks immediate and permanent injunctive relief, restitution, damages and other relief for Gildan's unconscionable behavior.

In support of its complaint, Fruit of the Loom alleges as follows:

## JURISDICTION AND VENUE

1.      This Court has jurisdiction pursuant to 28 U.S.C. § 1332(a)(3) because this is an action between citizens of different states and citizens of a foreign state and the amount in controversy exceeds $75,000, exclusive of interest and costs.

2.      Venue is proper in this Court under 28 U.S.C. §§ 1391(a)(2) and (c) because defendants are subject to jurisdiction in this judicial district. This Court has personal jurisdiction over defendants because they have committed torts in this state. Moreover, Gildan has transacted and continues to transact business in this state. Gildan solicits customers and advertises in this state and has an authorized distributor in this judicial district.

## PARTIES

3.      Plaintiff Fruit of the Loom, Inc. is a Delaware corporation with its principal place of business at 200 W. Madison Street, Suite 2700, Chicago, Illinois. Plaintiff Union Underwear

Company, Inc., d/b/a Fruit of the Loom, a wholly owned subsidiary of Fruit of the Loom, Inc., is a New York corporation having a principal place of business at One Fruit of the Loom Drive, Bowling Green, Kentucky. Plaintiffs will be collectively referred to as "Fruit of the Loom" or "the Company."

4.      Gildan is a Canadian corporation with its principal place of business in Ville Saint-Laurent, Quebec, Canada.

5.      According to Gildan's SEC Form 20-F, dated February 16, 2001, defendant David G. Cherry ("Cherry") is a resident of Montreal, Quebec, Canada.

## FACTUAL BACKGROUND

### Gildan and Cherry Steal Fruit of the Loom Trade Secrets

6.      Fruit of the Loom manufactures and sells various garments, including "activewear" products. Activewear includes jersey and fleece garments, principally T-shirts and sweatshirts, that can be imprinted or otherwise embellished.

7.      Gildan is one of Fruit of the Loom's main competitors for activewear customers. In fact, Gildan's SEC filings refer to Fruit of the Loom as a "significant competitor." Fruit of the Loom and Gildan sell similar products to many of the same wholesalers and distributors who, in turn, resell the products to garment embellishers.

8.      Until 1998, Cherry was employed by Fruit of the Loom. His last position at Fruit of the Loom was Vice President of Order Fulfillment, where he was responsible for Fruit of the Loom's customer service and distribution worldwide. He also held positions in the production planning area. Cherry is now Executive Vice President of Planning and Logistics at Gildan. He also is a member of Gildan's Executive Management Committee.

9.     Until recently, Elizabeth A. Walton ("Walton") was Director of Customer Service at Fruit of the Loom.

10.     On or about November 27, 2000, Cherry called Walton at Fruit of the Loom and left a voice mail message asking her to call him. When Walton returned his call, Cherry asked her to call him again from a payphone using a Gildan 800 number. Walton complied. When she called back, Cherry asked her to send him copies of Fruit of the Loom's "Forecast Report" and "Sew Plan," which, as described below, are highly detailed operating plans for Fruit of the Loom's global sales and manufacturing efforts. Walton already possessed a copy of the Sew Plan. She then obtained a copy of the Forecast Report from Fruit of the Loom's computer system. After she left work that day, Walton sent the Forecast Report and her copy of the Sew Plan via Federal Express to Cherry in Canada.

11.     The next day (on or about November 28, 2000), Cherry called Walton and thanked her for sending the Sew Plan and Forecast Report.

12.     When Walton sent the Sew Plan and Forecast Reports to Cherry, she knew they were confidential and "should not have been provided to anyone outside the [C]ompany."

13.     In late December 2000, a member of Gildan's senior management asked Harold Moore, then a Gildan plant manager in North Carolina, and a former Fruit of the Loom executive, to review a current Fruit of the Loom Sew Plan to interpret the report's style numbers. Moore knew this report was confidential and understood "that a competitor could use the information in the report to damage Fruit of the Loom's business or gain a competitive advantage."

### The Sew Plan and Forecast Reports Detail
### <u>Fruit of the Loom's Worldwide Business Strategies</u>

**<u>The Sew Plan</u>**

14.    In essence, the Sew Plan is a blueprint for the production side of Fruit of the Loom's business.  The Sew Plan directs production for plants located primarily in the U.S., Canada, El Salvador, Honduras, Mexico, Columbia, Guatemala, and the Dominican Republic.

15.    Among other things, the Sew Plan:

(a)    provides total weekly production requirements for each plant;

(b)    provides total weekly production for each selling style and manufacturing make, including activewear products;

(c)    includes changes in production locations for specific styles;

(d)    lists production starts of new garment styles to specific plants as well as styles taken out of production;

(e)    breaks down weekly production requirements and capacity utilization (measured by unit dozens) for each selling style and manufacturing make by plant; and

(f)    delineates Fruit of the Loom's short-term (six month) and long-term (twelve month) weekly production requirements for each style.

16.    Fruit of the Loom's overall supply-chain structure, including the Company's entire vertical manufacturing operation (*e.g.*, yarn production, knitting, cloth finishing, cutting, sewing, packaging, and distribution), raw material and supply purchase, and transportation

logistics, is based on the Sew Plan. In addition, Fruit of the Loom used the Sew Plan available to Walton in late November 2000 to prepare its 2001 budget.

17. The information in the Sew Plan is highly confidential and proprietary. It is not publicly available. The Sew Plan is only distributed to a limited group of employees, including Walton, involved with Fruit of the Loom's planning process. It is not disclosed to Fruit of the Loom's customers or competitors.

18. The Sew Plan provides Gildan with unique insight into Fruit of the Loom's production plans. Gildan now has detailed information about Fruit of the Loom's capacity at each of its plants. Gildan also knows Fruit of the Loom's production plans for new product styles. The short-term and long-term production rates are particularly advantageous to Gildan. These rates show Fruit of the Loom's six- and twelve-month production forecasts. The short- and long-term production rates, combined with Cherry's knowledge of Fruit of the Loom's planning procedures, allow Gildan to project the inventory position for each of the Company's garment styles. Because it knows where Fruit of the Loom may have insufficient inventory to meet demand, Gildan can target the affected market segment. Moreover, Gildan has plants in many of the same locations as Fruit of the Loom (*e.g.*, Honduras and El Salvador). Using the Sew Plan's production rates by location and its own labor rate information, Gildan can estimate Fruit of the Loom's sewing production costs.

19. In addition to Cherry, Gildan has hired two former Fruit of the Loom employees who know how to analyze the Sew Plan to determine Fruit of the Loom's production plans. Kevin Daugherty works at Gildan as Vice President, Textile Planning. Nick Schutt also works at Gildan in the activewear business. Daugherty and Shutt left Fruit of the Loom in 1998. During their tenure at Fruit of the Loom, Daugherty and Schutt worked in the Company's planning

department and held positions in customer service and distribution under Cherry. They are very familiar with the Sew Plan and its significance to Fruit of the Loom's production and financial planning.

**The Forecast Report**

20.     Fruit of the Loom's Forecast Report tracks global sales (measured by unit dozens) by every Fruit of the Loom product category for the entire year worldwide. The information contained in the Forecast Report is highly proprietary and confidential. It is not publicly available.

21.     In particular, the Forecast Report breaks out the sales and percentage changes from the operational forecast for each Fruit of the Loom product category and style number in the U.S., Canada, Mexico, Japan, and Europe by quarter and month. This comprehensive sales information provides Gildan with a significant competitive advantage. With these data, Gildan knows what products Fruit of the Loom intends to concentrate on selling in the market. Gildan can use this information to develop more effective competitive strategies against Fruit of the Loom.

22.     The Forecast Report also includes sales data for specific customers by unit volume. In particular, it provides customer-specific sales figures broken down by quarter, performance to budget and previous annual performance. This customer information provides Gildan with immense marketing advantages. Among other things, Gildan knows what volume Fruit of the Loom sells to its customers. Many of Fruit of the Loom's major customers are actual or potential Gildan customers. Gildan can use the Forecast Report to sell more of its products to existing and new customers, all at the expense of Fruit of the Loom.

23.     In addition, the Forecast Report details Fruit of the Loom's sales performance to budget, which likewise provides Gildan with a significant competitive advantage. Because the Forecast Report reveals areas where Fruit of the Loom sales are meeting or exceeding budget, it allows Gildan to develop its own strategic response. Gildan could reduce prices for specific product categories to undercut Fruit of the Loom's sales efforts.

24.     The Forecast Report also contains historical actual sales data for 1996 through 1999 broken out by product category worldwide. This information likewise provides Gildan with valuable competitive intelligence. For example, it gives trends in Fruit of the Loom's sales. With this information, Gildan can determine whether to develop new product categories or enter new markets. The historic data also reveal styles and accounts where Fruit of the Loom's sales efforts have been both successful and unsuccessful. Gildan can use this information to specifically target products and customers. Gildan also can use the historical sales data to evaluate its competitive effectiveness against Fruit of the Loom.

25.     In sum, the Sew Plan and Forecast Report provide Gildan with a road map to Fruit of the Loom's production and sales strategies worldwide. Gildan can analyze Fruit of the Loom's sales projections against its production plan. Gildan also can identify areas where Fruit of the Loom has either too much or too little production and tailor its own sales and production strategies accordingly. Also, the combination of style- and plant-specific production forecasts and sales data allows Gildan to estimate Fruit of the Loom's raw material consumption.

### Gildan Hires Fruit of the Loom's
### Senior Vice President of Activewear Sales

26.     John A. Martin ("Martin") was employed by Fruit of the Loom for over 20 years. When he left on March 6, 2001, Martin was Senior Vice President of Activewear Sales.

356582/C/2  WS7602_                                           8

Immediately after leaving Fruit of the Loom, Martin went to work for Gildan, where he now is in charge of U.S. sales.

27.     Martin was a member of Fruit of the Loom's senior management, with access to the Company's proprietary business strategies and operational plans. For the past three years, Martin had primary responsibility for developing Fruit of the Loom's strategies for competing against Gildan. In particular, he knows Fruit of the Loom's sales and pricing strategies regarding key activewear accounts. He also knows Fruit of the Loom's overall pricing strategies for its activewear business. In addition, he knows Fruit of the Loom's product development plans. This highly sensitive information is not publicly available.

28.     The information that Martin possesses about Fruit of the Loom would provide Gildan a tremendous competitive advantage. In particular, Gildan could use Martin's knowledge of Fruit of the Loom's sales strategies and product development plans to formulate its own responsive strategies. Martin had access to Fruit of the Loom's detailed manufacturing costs by product, which is the basis for the Company's product pricing. This information is highly sensitive and confidential, and Fruit of the Loom obtains value from it not being known to its competitors. Fruit of the Loom does not disclose this information outside of the Company.

29.     On March 9, 2001, Fruit of the Loom sent Martin a letter asking him to confirm his continuing duty to keep Fruit of the Loom's proprietary information confidential. Gildan also received a copy of that letter.

30.     By obtaining Fruit of the Loom's Forecast Report and Sew Plan and hiring Martin, Gildan has obtained a significant unfair advantage over Fruit of the Loom. With Fruit of the Loom's most competitively sensitive information, Gildan has invaluable strategic and operational information about how Fruit of the Loom is competing, and will compete, in the

market. As one of Fruit of the Loom's main competitors in activewear, Gildan can use this information to undercut Fruit of the Loom with its most important customers. To perform his job at Gildan, Martin will have to use or disclose this confidential information.

### Fruit of the Loom Takes Reasonable Steps to Protect Its Trade Secrets

31.     Fruit of the Loom requires its managerial employees to annually sign a Conflicts of Interest Questionnaire, which Walton signed on September 9, 2000, and Martin signed on May 13, 2000.

32.     In signing the Conflicts of Interest Questionnaire, the employees represent they have read Fruit of the Loom's Standards of Business Ethics. Paragraph I(5) of these standards prohibits:

> [d]isclosure to third parties or use of confidential information for matters unrelated to your employment with the Company concerning any aspect of the business, finances or operations of the Company or confidential information acquired regarding companies with which the Company is, or is considering, doing business, whether or not such disclosure or use is motivated by an actual or anticipated personal profit or advantage.

33.     Fruit of the Loom's "Personal Use of Company System Resources" policy prohibits "[u]nauthorized use or misuse of the company's systems including e-mail, internet, or any aspect of the company's technology may result in disciplinary action, up to and including discharge."

34.     Fruit of the Loom's Policy Statement applies to the use of "Company computer equipment and electronic resources, protection of Company data and compliance with Company data security policies." It explicitly proscribes disclosure of confidential information to third parties:

356582/C/2   WS7602_

> Company information will not be shared inappropriately.
> Company files and data are considered property of the Company.
> Sharing or use of these information resources for any reason other
> than official Company business is prohibited.

Walton acknowledged this statement electronically in 2000.

35.     The Policy Statement describes Fruit of the Loom's Information Security Policy, which also applies to all employees. This policy warns employees about the importance of maintaining information security: "Information gives our business advantages over our competitors. Protecting our information helps to assure that the company remains profitable and that the interest of our stakeholders are well served."

36.     Each time Fruit of the Loom employees log in to the Company's computer system, a "user notice" appears, reminding them that the computer system is only to be used by authorized employees within the scope of their authority.

37.     In addition, Fruit of the Loom posts its "Employee Guidelines" throughout its facilities and on its intranet. Under the Employee Guidelines, theft of company property is a dischargeable offense.

38.     On April 16, 1998, Cherry entered into a Severance Agreement with Fruit of the Loom. Among other things, this Severance Agreement requires Cherry to maintain the confidentiality of Fruit of the Loom's proprietary and secret information. In particular, he agreed to:

> Not disclose to any third party any confidential or secret
> information regarding the Company, its subsidiaries or affiliates, or
> their respective businesses or affairs . . . .

39.     Under the Severance Agreement, confidential information includes:

(i) . . . information, research and development, and systems relating to and knowledge of and experience in the marketing, manufacture, sale and distribution of products; (ii) business, manufacturing, marketing, and promotional programs, plans, strategies and forecasts; (iii) proprietary software and data; . . . (v) sales data, market research and information concerning consumer preferences; (vi) knowledge of the identity of and special relationships with manufacturers, vendors and suppliers; (vii) information concerning quality, inventory and purchasing controls, inventory and supply volumes, product lines, mixes and styles, prices, pricing practices, credit terms, net prices, costs, expenses, operating results, and financial performance and data concerning the Company or its supplier and customers; [and] (viii) customer lists and business records.

## COUNT I

### Violations of the Illinois Trade Secrets Act by Gildan and Cherry

40.     Fruit of the Loom realleges and incorporates by reference the allegations in paragraphs 1 through 39.

41.     Gildan and Cherry have misappropriated valuable proprietary and trade secret information concerning Fruit of the Loom's sales, customer strategies, production, inventory, costs and competitive strategies. This information constitutes trade secrets under the Illinois Trade Secrets Act, 765 ILCS 1065, *et seq.*

42.     The information Gildan and Cherry misappropriated is sufficiently secret for Fruit of the Loom to derive economic value from it not being generally known to other persons who can obtain economic value from its use.

43.     The information Gildan and Cherry misappropriated is the subject of efforts by Fruit of the Loom that are reasonable under the circumstances to maintain its secrecy or confidentiality.

44.     Gildan and Cherry intentionally, maliciously and without authorization misappropriated Fruit of the Loom's trade secrets. Both Gildan and Cherry knowingly acquired Fruit of the Loom's trade secrets by improper means.

45.     With the trade secrets misappropriated from Fruit of the Loom, Gildan and Cherry can do substantial and irreparable damage to Fruit of the Loom's business. Gildan and Cherry are being unjustly enriched at Fruit of the Loom's expense.

46.     Unless Gildan and Cherry are enjoined from using or disclosing Fruit of the Loom's trade secrets, Fruit of the Loom will suffer severe competitive losses. This conduct by Gildan and Cherry also will irreparably harm Fruit of the Loom, which has no adequate remedy at law for these injuries. Unless this Court issues immediate and permanent injunctive relief, these injuries will continue to accrue.

### COUNT II

### Violation of the Illinois Trade Secrets Act by Gildan

47.     Fruit of the Loom realleges and incorporates by reference the allegations in paragraphs 1 through 46.

48.     Martin possesses valuable proprietary and trade secret information concerning Fruit of the Loom's business strategies, pricing information, product development and operational plans, particularly as they relate to Gildan and the activewear market. This information constitutes trade secrets under the Illinois Trade Secrets Act, 765 ILCS 1065, *et seq.*

49.     The proprietary and confidential information the Company disclosed to Martin yields great economic benefit to Fruit of the Loom.

50.     By its misappropriating the Forecast Plan and Sew Report, Gildan has demonstrated that it does not respect the trade secrets of its competitors.

356582/C/2  WS7602_                                              13

51.     As one of Gildan's key sales executives in the U.S., Martin will be involved in decision-making regarding the same type of matters as he was at Fruit of the Loom. In making these decisions, Martin must inevitably take Fruit of the Loom's trade secrets into consideration. Martin cannot fulfill his responsibilities at Gildan without recalling what he knows about Fruit of the Loom's confidential sales and pricing strategies for key activewear accounts.

52.     At Gildan, Martin will be expected to compete for Fruit of the Loom accounts. Martin cannot fulfill these expectations without recalling and relying on what he knows about Fruit of the Loom's confidential financial information, pricing structure and sales strategy.

53.     Gildan has knowingly and purposefully put Martin in the position where he will be unable to fulfill his job responsibilities without drawing upon the broad knowledge of the trade secrets he acquired and developed during his employment in a fiduciary capacity as Fruit of the Loom's Senior Vice President of Activewear Sales.

54.     Gildan has willfully induced an inevitable breach of Martin's duty to protect Fruit of the Loom's trade secrets.

55.     Unless Gildan and its agents and employees are enjoined from using or disclosing Fruit of the Loom's trade secrets, Fruit of the Loom will suffer severe competitive losses and disadvantage in the activewear market. This conduct also will irreparably harm Fruit of the Loom, which has no adequate remedy at law for these injuries. The balance of harms strongly favors Fruit of the Loom because, once the trade secrets are disclosed, the competitive injury to the Company is irreparable. Unless this Court immediately restrains and permanently enjoins Gildan from using Martin in any sales and marketing role at Gildan, these injuries will continue to accrue.

## COUNT III

### Inducement to Breach Fiduciary Duty by Gildan and Cherry

56.    Fruit of the Loom realleges and incorporates by reference the allegations in paragraphs 1 through 55.

57.    Walton owed a fiduciary duty to Fruit of the Loom to protect the Company's proprietary information and trade secrets and to not disclose such information to Gildan or Cherry.

58.    Gildan and Cherry knew or should have known of Walton's fiduciary duty to Fruit of the Loom when they induced and/or knowingly participated in her breach of that duty. Among other things, this duty includes not disclosing confidential and proprietary information to Fruit of the Loom's competitors.

59.    Despite this knowledge, Gildan and Cherry intentionally and unjustifiably induced Walton to breach her fiduciary duty to Fruit of the Loom.

60.    Gildan and Cherry have benefited and will benefit from Walton's breach of fiduciary duty.

61.    As a result of Gildan and Cherry's unlawful conduct, Fruit of the Loom has been irreparably harmed and has no adequate remedy at law.

## COUNT IV

### Civil Conspiracy by Gildan and Cherry

62.    Fruit of the Loom realleges and incorporates by reference the allegations in paragraphs 1 through 61.

63.    Gildan and Cherry unlawfully conspired with Walton to misappropriate Fruit of the Loom's trade secrets and confidential information.

64.     As a result of this conspiracy, Fruit of the Loom has been irreparably harmed and has no adequate remedy at law.

## COUNT V

### Misappropriation by Gildan and Cherry

65.     Fruit of the Loom realleges and incorporates by reference the allegations in paragraphs 1 through 64.

66.     Gildan and Cherry have misappropriated valuable non-public, confidential information concerning Fruit of the Loom's sales, customer strategies, production, inventory, costs and competitive strategies.

67.     Fruit of the Loom has invested extensive time, labor, skill and money into creating reports concerning non-public, confidential information.

68.     Gildan and Cherry have used and continue to use Fruit of the Loom's non-public, confidential information in competition with Fruit of the Loom.

69.     Gildan and Cherry have gained and will continue to gain a special advantage by using Fruit of the Loom's non-public, confidential information which they did not develop or create.

70.     Gildan's and Cherry's use of Fruit of the Loom's non-public, confidential information has caused and will continue to cause commercial damage to Fruit of the Loom.

71.     Unless Gildan and Cherry are enjoined from using or disclosing Fruit of the Loom's valuable non-public, confidential information, Fruit of the Loom will suffer severe competitive losses. This conduct also will irreparably harm Fruit of the Loom, which has no adequate remedy at law for these injuries. Unless this Court issues immediate and permanent injunctive relief, these injuries will continue to accrue.

## COUNT VI

### Unfair Competition by Gildan and Cherry

72.    Fruit of the Loom realleges and incorporates by reference the allegations in paragraphs 1 through 71.

73.    Fruit of the Loom's property rights in its valuable non-public, confidential information concerning Fruit of the Loom's sales, customer strategies, production, inventory, costs and competitive strategies are protected by common law.

74.    Gildan and Cherry have infringed Fruit of the Loom's property rights by misappropriating its non-public, confidential information.

75.    As a result of Gildan and Cherry's unfair competition, Fruit of the Loom has suffered and will continue to suffer damages.

76.    Unless Gildan and Cherry are enjoined from engaging in unfair competition with Fruit of the Loom by using or disclosing Fruit of the Loom's valuable non-public, confidential information, Fruit of the Loom will suffer competitive losses. This conduct also will irreparably harm Fruit of the Loom, which has no adequate remedy at law for these injuries. Unless this Court issues immediate and permanent injunctive relied, these injuries will continue to accrue.

### RELIEF REQUESTED

WHEREFORE, Fruit of the Loom requests that the Court enter a judgment in Fruit of the Loom's favor and against Gildan and Cherry and provide the following relief:

A.    Order, adjudge and decree that Gildan has violated the Illinois Trade Secrets Act;

B.    Order, adjudge and decree that Cherry has violated the Illinois Trade Secrets Act;

C.    Order, adjudge and decree that Gildan and Cherry have induced Walton to breach her fiduciary duty to Fruit of the Loom;

D.      Order, adjudge and decree that Gildan and Cherry have engaged in a civil conspiracy;

E.      Order, adjudge and decree that Gildan and Cherry have misappropriated Fruit of the Loom's non-public, confidential information;

F.      Order, adjudge and decree that Gildan and Cherry have engaged in unfair competition;

G.      Issue a temporary restraining order, preliminary injunction and a permanent injunction prohibiting Gildan and its principals, officers, agents, servants, employees (including, without limitation, Cherry), attorneys, and those persons under their control or in active concert or participation with them from:

      i.      distributing, disclosing and attempting to obtain in any way Fruit of the Loom's confidential and proprietary information including:

          a)      sales strategies and data;

          b)      sales production strategies and data;

          c)      customer information;

          d)      pricing strategies;

          e)      product development plans; and

          f)      trade secrets.

      ii.     using, distributing and disclosing in any way the information contained in the Sew Plan and Forecast Report obtained from Walton;

      iii.    employing Cherry in any capacity which would require him to violate the provisions the temporary restraining order or having:

a)     any involvement in obtaining Fruit of the Loom's confidential and proprietary information;

b)     any involvement in using any information in any form or manner contained in the Forecast Report and Sew Plan obtained from Walton;

c)     any involvement in contacting any Fruit of the Loom current employees; and

d)     any involvement in Gildan's strategic planning, customer targeting, sales budgeting, customer sales strategies, production planning, or customer pricing.

iv)     employing Martin in any capacity that would require him to violate the provisions of the temporary restraining order or having:

a)     any involvement in using any information in any form or manner contained in the Forecast Report and Sew Plan obtained from Walton; and

b)     any involvement with Gildan's strategic planning, customer targeting, sales budgeting, customer sales strategies, production planning or customer pricing.

H.     Award Fruit of the Loom all damages available under the Illinois Trade Secrets Act and the common law, including exemplary and punitive damages;

I.     Award Fruit of the Loom its reasonable attorneys' fees under the Illinois Trade Secrets Act;

J.     Order any other relief this Court may deem proper under the circumstances.

## JURY DEMAND

Fruit of the Loom demands trial by jury.

Dated this 4th day of April 2001.

Respectfully submitted,

One of the Attorneys for Plaintiffs
Fruit of the Loom, Inc. and Union Underwear
Company, Inc., d/b/a Fruit of the Loom

Michael J. Abernathy
Margaret A. McGreal
Andrea K. Cannon
Maurice E. Teixeira
BELL, BOYD & LLOYD
Three First National Plaza
Chicago, Illinois 60602
(312) 372-1121

## CERTIFICATE OF SERVICE

I hereby certify that I (1) am an attorney admitted to appear before this Court and (2) caused a true and correct copy of the foregoing Plaintiffs' Complaint for Injunctive Relief, Damages and Other relief to be sent to the following individuals:

> Gildan Activewear Inc.
> 725 Montee de Liesse
> Ville Saint-Laurent, Quebec
> Canada H4T 1P5
> Fax: (514) 735-2024
>
> and
>
> David G. Cherry
> c/o Gildan Activewear Inc.
> 725 Montee de Liesse
> Ville Saint-Laurent, Quebec
> Canada H4T 1P5
> Fax: (514) 735-2024

via personal service this 4th day of April 2001.

One of the Attorneys for Plaintiffs
Fruit of the Loom, Inc. and Union Underwear
Company, Inc. d/b/a Fruit of the Loom

JS 44
(Rev. 12/96)

# CIVIL COVER SHEET

The JS-44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

## I. (a) PLAINTIFFS

Fruit of the Loom, Inc. and
Union Underwear Company, Inc. d/b/a
Fruit of the Loom

## DEFENDANTS

Gildan Activewear Inc. and
David G. Cherry

01C 2315

**(b)** COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF  Cook
(EXCEPT IN U.S. PLAINTIFF CASES)

COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT _____
(IN U.S. PLAINTIFF CASES ONLY)

NOTE:  IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**(c)** ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)

Bell, Boyd & Lloyd
Three First National Plaza
Chicago, Illinois  60602   (312) 372-1121

ATTORNEYS (IF KNOWN)  MAGISTRATE JUDGE DENLOW

## II. BASIS OF JURISDICTION (PLACE AN "X" IN ONE BOX ONLY)

☐ 1 U.S. Government Plaintiff

☐ 2 U.S. Government Defendant

☐ 3 Federal Question (U.S. Government Not a Party)

☒ 4 Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (PLACE AN "X" IN ONE BOX FOR PLAINTIFF AND ONE BOX FOR DEFENDANT)
(For Diversity Cases Only)

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☒ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☒ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☒ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. ORIGIN (PLACE AN "X" IN ONE BOX ONLY)

☒ 1 Original Proceeding

☐ 2 Removed from State Court

☐ 3 Remanded from Appellate Court

☐ 4 Reinstated or Reopened

☐ 5 Transferred from another district (specify)

☐ 6 Multidistrict Litigation

☐ 7 Appeal to District Judge from Magistrate Judgment

## V. NATURE OF SUIT (PLACE AN "X" IN ONE BOX ONLY)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury — Med. Malpractice | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal 28 USC 157 | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 365 Personal Injury — Product Liability | ☐ 625 Drug Related Seizure of Property 21 USC 881 | | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 450 Commerce/ICC Rates/etc. |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 460 Deportation |
| ☐ 151 Medicare Act | ☐ 340 Marine | **PERSONAL PROPERTY** | ☐ 650 Airline Regs. | ☐ 830 Patent | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | ☐ 345 Marine Product Liability | ☐ 370 Other Fraud | ☐ 660 Occupational Safety/Health | ☐ 840 Trademark | ☐ 810 Selective Service |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 371 Truth in Lending | ☐ 690 Other | **SOCIAL SECURITY** | ☐ 850 Securities/Commodities/Exchange |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 380 Other Personal Property Damage | **LABOR** | ☐ 861 HIA (1395ff) | ☐ 875 Customer Challenge 12 USC 3410 |
| ☒ 190 Other Contract | ☐ 360 Other Personal Injury | ☐ 385 Property Damage Product Liability | ☐ 710 Fair Labor Standards Act | ☐ 862 Black Lung (923) | ☐ 891 Agricultural Acts |
| ☒ 195 Contract Product Liability | | | ☐ 720 Labor/Mgmt. Relations | ☐ 863 DIWC/DIWW (405(g)) | ☐ 892 Economic Stabilization Act |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | | ☐ 864 SSID Title XVI | ☐ 893 Environmental Matters |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate Sentence | ☐ 730 Labor/Mgmt. Reporting & Disclosure Act | ☐ 865 RSI (405(g)) | ☐ 894 Energy Allocation Act |
| ☐ 220 Foreclosure | ☐ 442 Employment | **HABEAS CORPUS:** | ☐ 740 Railway Labor Act | **FEDERAL TAX SUITS** | ☐ 895 Freedom of Information Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/Accommodations | ☐ 530 General | ☐ 790 Other Labor Litigation | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 900 Appeal of Fee Determination Under Equal Access to Justice |
| ☐ 240 Torts to Land | ☐ 444 Welfare | ☐ 535 Death Penalty | ☐ 791 Empl. Ret. Inc. Security Act | ☐ 871 IRS — Third Party 26 USC 7609 | ☐ 950 Constitutionality of State Statutes |
| ☐ 245 Tort Product Liability | ☐ 440 Other Civil Rights | ☐ 540 Mandamus & Other | | | ☐ 890 Other Statutory Actions |
| ☐ 290 All Other Real Property | | ☐ 550 Civil Rights | | | |
| | | ☐ 555 Prison Condition | | | |

## VI. CAUSE OF ACTION
(CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE BRIEF STATEMENT OF CAUSE. DO NOT CITE JURISDICTIONAL STATUTES UNLESS DIVERSITY.)

28 U.S.C. Sec. 1332 (a)(3) - Illinois Trade Secret Act, 765 ILCS 1065, et seq.

APR 05 2001

## VII. REQUESTED IN COMPLAINT

CHECK IF THIS IS A CLASS ACTION
☐ UNDER F.R.C.P. 23

DEMAND $

CHECK YES only if demanded in complaint
JURY DEMAND:  ☒ YES   ☐ NO

## VIII. This case

☒ is not a refiling of a previously dismissed action.

☐ is a refiling of case number_____, previously dismissed by Judge _____

DATE
April 4, 2001

SIGNATURE OF ATTORNEY OF RECORD
Margaret A. McGrew

## UNITED STATES DISTRICT COURT

### NORTHERN DISTRICT OF ILLINOIS

**01C 2315**

In the Matter of    Fruit of the Loom, Inc., and Union Underwear Company, Inc., d/b/a Fruit of the Loom
       v.
       Gildan Activewear Inc. and David G. Cherry      Case Number:

**JUDGE GOTTSCHALL**
**MAGISTRATE JUDGE DENLOW**

APPEARANCES ARE HEREBY FILED BY THE UNDERSIGNED AS ATTORNEY(S) FOR:

Fruit of the Loom, Inc. and Union Underwear Company, Inc., d/b/a Fruit of the Loom

Plaintiff

| (A) | (B) |
|---|---|
| SIGNATURE *Michael J Abernathy* | SIGNATURE *Margaret A McGreal* |
| NAME<br>Michael J. Abernathy | NAME<br>Margaret A. McGreal |
| FIRM<br>Bell, Boyd & Lloyd LLC | FIRM<br>Bell, Boyd & Lloyd LLC |
| STREET ADDRESS<br>70 West Madison Street, Suite 3300 | STREET ADDRESS<br>70 West Madison Street, Suite 3300 |
| CITY/STATE/ZIP<br>Chicago, Illinois 60602 | CITY/STATE/ZIP<br>Chicago, Illinois 60602 |
| TELEPHONE NUMBER<br>312-807-4257 | TELEPHONE NUMBER<br>312-807-4391 |
| IDENTIFICATION NUMBER (SEE ITEM 4 ON REVERSE)<br>6183736 | IDENTIFICATION NUMBER (SEE ITEM 4 ON REVERSE)<br>6229821 |
| MEMBER OF TRIAL BAR?   YES [X]   NO [ ] | MEMBER OF TRIAL BAR?   YES [X]   NO [ ] |
| TRIAL ATTORNEY?   YES [X]   NO [ ] | TRIAL ATTORNEY?   YES [X]   NO [ ] |
| DESIGNATED AS LOCAL COUNSEL?   YES [ ]   NO [X] | DESIGNATED AS LOCAL COUNSEL?   YES [ ]   NO [X] |
| (C) | (D) |
| SIGNATURE | SIGNATURE |
| NAME<br>Maurice E. Teixeria | NAME<br>Andrea K. Cannon |
| FIRM<br>Bell, Boyd & Lloyd LLC | FIRM<br>Bell, Boyd & Lloyd LLC |
| STREET ADDRESS<br>70 West Madison Street, Suite 3300 | STREET ADDRESS<br>70 West Madison Street, Suite 3300 |
| CITY/STATE/ZIP<br>Chicago, Illinois 60602 | CITY/STATE/ZIP<br>Chicago, Illinois 60602 |
| TELEPHONE NUMBER<br>312-807-4250 | TELEPHONE NUMBER<br>312-807-4312 |
| IDENTIFICATION NUMBER (SEE ITEM 4 ON REVERSE)<br>6270712 | IDENTIFICATION NUMBER (SEE ITEM 4 ON REVERSE)<br>6270090 |
| MEMBER OF TRIAL BAR?   YES [ ]   NO [X] | MEMBER OF TRIAL BAR?   YES [ ]   NO [X] |
| TRIAL ATTORNEY?   YES [X]   NO | TRIAL ATTORNEY?   YES [X]   NO [ ] |
| DESIGNATED AS LOCAL COUNSEL?   YES [ ]   NO [X] | DESIGNATED AS LOCAL COUNSEL?   YES [ ]   NO [X] |

PLEASE COMPLETE IN ACCORDANCE WITH INSTRUCTIONS ON REVERSE.